*583 OPINION.
Geeen:
The principal questions presented in these cases are whether the petitioner comes within the provisions of section 209 of the Revenue Act of 1917, and section 200 of the Revenue Acts of 1918 and 1921.
Section 209 of the Revenue Act of 1917 is as follows:
That in the case of a trade or business having no invested capital or not more than a nominal capital there shall be levied, assessed, collected and paid, in addition to the taxes under existing law and under this Act, in lieu of the tax' imposed by section two hundred and one, a tax equivalent to eight per centum of the net income of such trade or business in excess of the following deductions: In the case of a domestic corporation $3,000, and in the ease of a domestic partnership or a citizen or resident of the United States $6,000; in the case of all other trades or business, no deduction.
Section 200 of the Revenue Acts of 1918 and 1921 is in part as follows :
The term “ personal service corporation ” means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include any foreign corporation, nor any corporation 50 per centum or more of whose gross income consists either (1) of gains, profits, or income derived from trading as a principal, or (2) of gains, profits, commissions, or other income, derived from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive.
The petitioner has invested capital, so we are confronted with the question whether it had “ not more than a nominal capital ” under the provisions of section 209 of the Revenue Act of 1917. Under this section capital is considered as merely nominal if it is used solely as a fund from which to advance salaries, wages, etc., and to provide office furniture, accommodations and equipment. Under such circumstances it plays no integral part in the actual production of income. It is incidental to the earning power of the corporation which functions independently of it. See De Laski, etc. v. Iredell, 268 Fed. 377. But where the use of capital serves a direct and necessary function in carrying on the business as it was in fact carried on, it is not to be classified as merely nominal. See R. H. Martin, Inc. v. Edwards, 293 Fed. 238.
*584 For the year 1917 it has been stipulated that textbooks, supplies and stationery, which were purchased at a cost of $7,272.88, were sold for $10,336.65, resulting in a net gain of $3,063.77, while in addition $547.43 was received from rentals on typewriters, lockers, etc. The record shows that the petitioner had approximately $5,000 invested capital, and that the taxable net income for the year 1917 was $8,480.82. As the above mentioned $3,610.20 resulted from the use of capital, we are of the opinion that the petitioner is not entitled to be classed as a corporation, having “ not more than a nominal capital.”
The statutory definition of a personal service corporation contains thi'ee elements, all of which must be present before the corporation may be said to come within the definition. First, the income must be ascribed primarily to the activities of the principal stockholders; second, such principal owners or stockholders must be regularly engaged in the active conduct of the corporation’s affairs; and, third, capital must not be a material income-producing factor.
T. W. Donoho, who owned 497 shares of the 500 shares of stock of the petitioner, was regularly engaged in the active conduct of the affairs of the petitioner. However his duties were administrative and executive. The record shows conclusively that the income can not be ascribed primarily to his activities. The tabulation of the gross income discloses that in all the years under consideration more than 50 per cent of this income was derived from the Washington branch school. This Washington branch was established and operated by a nonstockholder, operating under a contract which gave him a voice in the management and policy of this school. It is true that Donoho was a frequent visitor to Washington and was constantly in telephonic communication, but there is nothing in the record to show that his connection with this school was other than administrative.
The petitioner is here seeking a personal service exemption where the personal service rendered was teaching business courses. It is doubtful if the principal stockholder was qualified to teach anything but typewriting and in any event he did no teaching. The teaching was done by nonstockholder employees and the salaries paid to such employees varied from $60,643.58 in 1919 to $73,548.63 in 1921. In addition the Washington branch, operated by a nonstockholder, was practically as large as the Baltimore school and produced more income in each of the years under consideration.
In the Appeal of Patterson-Andress Co., 6 B. T. A. 392, where the question of to whom the income should be primarily ascribed was raised, we said:
In our opinion this clause means more than that the stockholders shall obtain the clients and supervise the work, or that clients shall look to their experience; it means, among other things, that the corporation may not rely upon nonstockholders todo a substantial amount of the work which produces the income whether such work be detailed or supervisory. Just as another clause *585 excludes from personal service classification those corporations where capital contributes materially to the income, so does this clause exclude corporations where the services of employees so contribute.
As to the third requisite that capital be not a material income-producing factor, we find that in the three years that the petitioner is seeking personal service classification, its income to be ascribed to the use of capital is as follows: 1919, $7,035.28; 1920, $3,721.05; and 1921, $6,121.04, while the taxable net income for these years was $17,510.85, $14,209.25, and $19,702.51, respectively. This income from the sale or rental of merchandise bears far too great a proportion to the net income of the petitioner to be termed immaterial.
The petitioner further alleges that the respondent erred in disallowing as a deduction in each of the years 1919, 1920, and 1921, a portion of the salaries paid to T. W. Donoho, its president. The proof offered in support of this allegation consists principally of statements of the witnesses as to the nature and quality of the services rendered by Donoho. This proof establishes beyond question that Donoho possesses all of the qualifications necessary to the success of the petitioner corporation and that due to his ability and activity it has been successful. But there is little, if any, proof of the dollar value of the services rendered in the taxable year. The respondent determined that a reasonable salary for the years 1919 and 1920 was $15,000 and for the year 1921, $25,000. The presumption is that such determinations are correct and there is not in the record evidence sufficient to overcome this presumption.
Reviewed by the Board.

Judgment wül be entered for the respondent.

Lansdon dissents.
ARundell:
I am of the opinion that the petitioner is entitled to have its tax for the year 1917 computed under the provisions of section 209 of the Revenue Act of 1917.